## SMITH vs. BROWN.

ERROR from the New-York common pleas. This was a *qui tam* action, for the recovery of a penalty of $100, given by the tenth section of the act for the inspection of flour and meal. (2 *R. L.* 323.) The declaration recites various parts of the act; amongst others, the sections requiring that the

*In an action of debt for the penalty given by the act for the inspection of flour and meal, &c. for altering an inspector's brand-mark, it* was held, that when flour is offered for inspection, the reasonable inference is, that it is intended for exportation. To say in a declaration, after setting out the act at large, that the defendant was the owner of one *such* barrel of flour, which he had caused to be inspected, is a sufficient averment, especially after verdict, that the flour was intended for exportation. The cutting out a brand-mark is an alteration, within the meaning of the statute; and that an act is done ignorantly, is no excuse for the violation of a statute.

UTICA,
Aug. 1828.

Smith
v.
Brown.

casks containing flour and meal intended for exportation, shall be branded with the initials of the name of the manufacturer, the net weight of each cask, and the quality of the flour or meal as superfine, fine, fine middling, &c. before the same shall be offered for inspection ; and that the *inspector*, amongst other duties prescribed, shall mark or brand, upon each cask containing flour or meal not fit for exportation, the word *bad*. It also recites the clause giving the penalty, that if any person should alter or counterfeit any of the aforesaid brands or marks, whether state or private, such person should forfeit, for every such offence, the sum of $100.   It is then averred, that on the 10th October, 1825, the defendant was the owner of one such barrel of wheat flour, which he had on that day caused and procured to be inspected by the plaintiff, an inspector of flour and meal, and that the plaintiff had marked and branded the said barrel of wheat flour with the word *bad ;* which brand was, by the defendant, immediately thereafter altered, contrary, &c. to the act.   By reason whereof an action accrued, &c. The defendant plead *nil debit.*

It was proved on the trial of the cause, as appears from the bill of exceptions, that on 6th October, 1825, the defendant purchased of one William James, 203 barrels of wheat flour, as and for *sour* flour, which were inspected on the 10th by the plaintiff, an inspector of flour, and by him branded *bad.* On the same day the word *bad* was scratched out from the barrels by the direction of the defendant, and the barrels stowed in the hold of a vessel bound to Jamaica, and covered up with corn in bulk, where they were seized by the plaintiff. Previous to the obliteration of the mark, the defendant inquired of the seller of the flour whether the word *bad* could be taken off the barrels, who informed him that it could be done when the flour should be out of the precincts of the port of New-York.   The brands were scratched out in the day time, the plaintiff saw the operation, and on being asked why he did not tell the defendant he was doing wrong, answered, that he sometimes let people lade all together, and then made them unlade.

The judge charged the jury, that the plaintiff had sustained his action and was entitled to recover. The defendant excepted, and the jury found a verdict for the plaintiff, on which judgment was rendered.

*T. L. Ogden*, for plaintiff in error. The declaration is bad in substance. The penalty does not attach, unless the brand is altered on a cask containing flour intended for exportation. There is no averment that this flour was intended for exportation. The inspector was not authorized to put any brands upon the casks, unless they had been previously branded with the name of the manufacturer, and with the net weight and quality of the flour. Of these particulars there is no averment. It should have been alleged how the alteration was made; whether by cutting out or otherwise. In declaring on a penal statute, when no form is given, the particulars must be set forth so as clearly to shew a violation of the law, and fully apprise the defendant of the charge against him. (13 *Johns. R.* 428. 3 *T. R.* 632. *Com. Dig. Action on Statute*, 321, *a.* 3. *Ib. Pleader C.*)

There was no alteration within the meaning of the act. There was no proof that the brand-mark was *altered;* the evidence is, that it was scratched out and destroyed. In penal statutes, words are to be construed according to the ordinary, obvious and natural import of the terms. To alter is to vary, to leave something of the original thing; not utterly to destroy it. To obliterate, or by chemical process to annihilate a bank bill, could not be called an alteration, nor could one be convicted of forgery for such an act. The terms *alter* and *cut out*, are used in their appropriate sense in different parts of the act, and are not used as synonymies.

There is no evidence that there were any other marks upon the barrel than the word *bad;* consequently, by defacing that word, the barrel of flour would be uninspected flour; and for putting it on board a vessel for exportation, the penalty would be $5, instead of $100. This heavy penalty is given, because an alteration of a brand of a public inspector is considered as a species of counterfeiting. It is a perpetration of a fraud. Unless, therefore, it was shewn that by the

UTICA,
Aug. 1828.

Smith
v.
Brown.

obliteration of the word *bad*, a different character was given to the flour than that of uninspected flour, the penalty did not attach.

The violation of the law was unintentional, founded in ignorance or misapprehension of its policy, and under the circumstances, the defendant might have been presumed by the jury to have acted with the assent of the inspector, who witnessed the transaction, and yet did not warn the defendant of the impropriety of his conduct.

*J. Anthon*, for defendant. The declaration is sufficient to support the judgment. It recites the several sections of the act bearing upon this question, and then avers that the defendant was the owner of one *such* barrel of flour, viz. such as was the subject of legislation. In declaring on a penal statute, it surely cannot be necessary to aver an offence in language stronger than the act itself uses. The penalty given is for *altering* or counterfeiting the brand-marks; the charge is that he did *alter*, &c.

It is said that scratching out or destroying the mark is no alteration. The word *alter* is derived from the latin word alter, and signifies the making of one thing another thing; that is, making it different from what it was. When this flour passed out of the hands of the inspector, it was marked *bad*; as such it might be shipped, but by defacing the mark, a fraud was perpetrated, and therefore the penalty is imposed.

As to the intent of the defendant, it was not inquirable into. In acts *mala in se*, the intent governs; but in acts *mala prohibita*, the only inquiry is, has the law been violated? (5 *D. & E.* 20. 1 *Gallison*, 392. id. 62. 7 *Wheaton*, 164. 1 *Payne*, 234, 409.) The acquiescence of the inspector would not excuse the defendant; he had not a dispensing power.

*P. A. Jay*, in reply. It is said that to *alter*, is to make one thing another thing; but if the whole is a blank, where is the offence? When a barrel of flour is purchased for home consumption, and it has the inspection marks upon it, such marks may be defaced, altered or destroyed with impunity. Unless the alteration is made with the intent to evade the statute, the party is not liable, and then to charge him with the penalty,

the intent must be averred. The fact of the flour being in the vessel, though evidence of the intent to export, is unavailing, unless it was alleged in the declaration that it was placed there with that intent. The averment that the defendant was the owner of one *such* barrel, is too loose.

Even in support of laws for the punishment of the highest offences against humanity and good order, courts confine themselves to the strictest rules of construction, (12 *Wheaton,* 474,) and in the imposition of penalties, nothing is taken by implication. (2 *Johns. R.* 380.) It is a universal principle of law, that punishment is not to be imposed where there is no criminal intent, and where the act is of such a character that it may have been done either innocently or guiltily, the question should be submitted to the jury, for them to pass on. That was not done in this case. The judge instructed the jury that the plaintiff was entitled to recover.

*By the Court,* SAVAGE, Ch. J. Brown sued Smith in the court below, for the penalty under the tenth section of the act for the inspection of flour and meal, and to establish the standard weight of grain, passed March 5th, 1813. The penal clause is as follows : " and if any person shall alter or counterfeit any of the aforesaid brand-marks, whether state or private, such person shall forfeit for every such offence, the sum of one hundred dollars." The plaintiff in the court below recovered. Upon writ of error, the points relied on are, that the declaration is insufficient ; that no alteration was made within the meaning of the act, but if so, not under circumstances to incur the penalty.

The declaration does not state that the flour had been purchased for exportation, nor that it had been branded according to the directions of the act. The declaration sets out the act sufficiently, which speaks entirely of flour intended for exportation. It then charges that the defendant was possessed of one *such* barrel of flour, which he had caused to be inspected, which the inspector had marked *bad,* and which mark the defendant altered contrary to the true intent and meaning of the statute. In *Ferris v. Coles,* (3 *Caines,* 212, 13,) it was decided that the statute confines the duty of the

inspector and the penalties to be incurred, to flour and meal, shipped, purchased or manufactured for exportation. Flour not intended for exportation, need not be inspected; and when it is offered for inspection, the reasonable inference is, that it is intended for exportation. The language of the declaration, that the defendant was the owner of one *such barrel of flour which he had caused to be inspected*, is a sufficient averment, especially after verdict, that the flour was intended for exportation. This question was not raised in the court below.

The next question is, whether the cutting out the brandmark is an alteration. The simple statement of the question seems to me an answer to it. I know of no course of reasoning or argument to elucidate a self evident proposition. To alter, is to make a thing different from what it was. The erasing any letter, or the addition to the mark, is an alteration. But it is said it was ignorantly done, and with no intention to violate the law. Ignorance is no excuse for the violation of a statute; but if it were, it would seem from the testimony that the excuse does not exist. The defendant inquired of Mr. James whether he could not cut out the mark. He purchased it as bad, evidently with intent to defraud. He was told, that after he had left the bounds of the state, he could cut out the mark; clearly implying, that within the state, it would be improper and unlawful for him to do so.

This seems to me a very clear case for affirmance.

The judgment is affirmed.